## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MARIO AYENDE-RIOS,

        Petitioner,

v.                           Case No. 8:20-cv-955-WFJ-SPF

SECRETARY, DEPARTMENT OF
CORRECTIONS,

        Respondent.

_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Mario Ayende-Rios petitions for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his twelve state court convictions and aggregate forty-year prison sentence.[1] Having reviewed the amended petition (Dkt. 13), the Respondent's response and supporting appendix (Dkts. 17 & 18), and Mr. Ayende-Rios's reply (Dkt. 22), the Court denies the petition.

### BACKGROUND AND PROCEDURAL HISTORY

***Conviction and Direct Appeal.*** A confidential informant gave an undercover detective Mr. Ayende-Rios's name and telephone number and said that Mr. Ayende-Rios

---

[1] A jury found Mr. Ayende-Rios guilty of two counts of trafficking heroin, two counts of possession of cocaine with intent to sell, one count of sale of cocaine, two counts of possession of a structure for trafficking controlled substances, three counts of possession of drug paraphernalia, and two counts of driving with a revoked license. (Dkt. 18-2 at 106–09) The trial court sentenced Ayende-Rios to thirty years in prison for one count of trafficking heroin, a consecutive ten years for the second count of trafficking heroin, and concurrent lesser sentences for all remaining counts. (Dkt. 18-2 at 157–168)

sold cocaine. (Dkt. 18-2 at 448–49) On January 8, 2015, the detective called Mr. Ayende-Rios, who agreed to meet in the parking lot of a grocery store to sell the detective cocaine. (Dkt. 18-2 at 449, 451, 454–55) When the detective arrived, he exited his car and sat in the front passenger seat of Mr. Ayende-Rios's car. (Dkt. 18-2 at 457) Mr. Ayende-Rios gave the detective a bag containing a white powdery substance, and the detective asked Mr. Ayende-Rios if the bag contained "good stuff." (Dkt. 18-2 at 457) Mr. Ayende-Rios confirmed that it did and placed the bag on a scale that showed that the bag weighed half an ounce. (Dkt. 18-2 at 457) The detective gave Mr. Ayende-Rios $700.00. (Dkt. 18-2 at 459) An analyst with the Florida Department of Law Enforcement tested the powdery substance and determined that the substance was cocaine. (Dkt. 18-2 at 648–49)

Mr. Ayende-Rios told the detective that he earned only fifty dollars from the cocaine sale and offered to sell the detective heroin. (Dkt. 18-2 at 460) Mr. Ayende-Rios referred to heroin as "manteca," a Puerto Rican slang term, and offered to sell the heroin for a reduced price of $110.00 a gram. (Dkt. 18-2 at 460–61) The detective asked to buy ten grams. (Dkt. 18-2 at 462) The detective heard Mr. Ayende-Rios speak on the telephone with a male who agreed to provide Mr. Ayende-Rios five grams later that evening and five more grams the next day. (Dkt. 18-2 at 462–63) Later that evening, Mr. Ayende-Rios and the detective agreed to meet the next day and agreed on a price of $1,100.00 for the ten grams. (Dkt. 18-2 at 465–66) The detective told Mr. Ayende-Rios that he would be interested in purchasing forty or fifty grams of heroin if the people who purchased heroin from the detective liked the quality of the heroin. (Dkt. 18-2 at 525)

The next day, on January 9, 2015, Mr. Ayende-Rios called the detective and asked if the detective could pick him up at an intersection near an apartment complex. (Dkt. 18-2 at 466–67) The detective drove to the intersection and picked up Mr. Ayende-Rios, who said that he did not have a driver's license. (Dkt. 18-2 at 467) Mr. Ayende-Rios told the detective that he paid a woman who lived in the apartment complex for use of her apartment to sell drugs. (Dkt. 18-2 at 467) The detective did not want to purchase the heroin at the apartment complex and drove to the parking lot of the grocery. (Dkt. 18-2 at 467)

While driving to the parking lot, the detective asked Mr. Ayende-Rios if he could purchase half a kilogram more of cocaine because his buyers liked the cocaine that Mr. Ayende-Rios had sold him. (Dkt. 18-2 at 467–68) Mr. Ayende-Rios replied that the cocaine was better in "rock" form, referring to crack cocaine, and offered to sell half a kilogram for $16,000.00 and a whole kilogram for $33,000.00 to $35,000.00. (Dkt. 18-2 at 467–69)

At the parking lot of the grocery store, Mr. Ayende-Rios called a male who said that he was in a silver car. (Dkt. 18-2 at 471) Mr. Ayende-Rios exited the detective's car and entered a silver van. (Dkt. 18-2 at 471) Mr. Ayende-Rios returned to the detective's car and gave the detective ten individually wrapped bags. (Dkt. 18-2 at 472) Mr. Ayende-Rios placed each bag on a scale that showed that each bag weighed one gram, and the detective paid Mr. Ayende-Rios $1,100.00 for the ten bags.

(Dkt. 18-2 at 472) The detective turned on a hidden video recorder[2], thanked Mr. Ayende-Rios for the heroin, and confirmed that he had paid $1,100.00. (Dkt. 18-2 at 476) An analyst with FDLE tested the substances in eight of the ten bags and determined that the substances were heroin and weighed 6.13 grams. (Dkt. 18-2 at 650–51)

A few days later, Mr. Ayende-Rios agreed to sell the detective thirty-eight grams of heroin and give him an additional two grams for free for doing business with him. (Dkt. 18-2 at 481) Several days later, Mr. Ayende-Rios told the detective that he could sell only thirty grams but agreed to charge him for only twenty-eight grams and give him the additional two grams for free. (Dkt. 18-2 at 482) The detective agreed to pay $3,080.00 for the thirty grams. (Dkt. 18-2 at 483) Mr. Ayende-Rios told the detective to meet him at the parking lot of the grocery store. (Dkt. 18-2 at 484)

When the detective arrived at the parking lot, Mr. Ayende-Rios exited his car and entered the detective's car.[3] (Dkt. 18-2 at 485) Mr. Ayende-Rios reminded the detective that they agreed to the thirty grams for $3,080.00 and showed the detective that he had written the price on his hand. (Dkt. 18-2 at 486) Mr. Ayende-Rios placed a plastic bag that contained a brown substance on a scale that showed that the bag weighed thirty-one grams. (Dkt. 18-2 at 486–87) The detective inspected the substance and asked Mr. Ayende-Rios if he obtained the heroin from the individual who supplied the heroin for the first purchase, and Mr. Ayende-Rios confirmed that he did. (Dkt. 18-2 at 489)

---

[2] The prosecutor played the recording for the jury. (Dkt. 18-2 at 594–97)
[3] The detective used a hidden video recorder to record this meeting, and the prosecutor played the recording for the jury. (Dkt. 18-2 at 597–600)

Mr. Ayende-Rios explained to the detective that his cocaine supplier did not want to sell the detective a half kilogram because the detective was a new customer but agreed to sell him two ounces. (Dkt. 18-2 at 489) Mr. Ayende-Rios suggested that they could go together to Clermont, Florida to buy the cocaine. (Dkt. 18-2 at 489–90)

The detective signaled to police officers who were surveilling the drug transaction, and the officers arrested Mr. Ayende-Rios. (Dkt. 18-2 at 491–92, 612) Another detective searched Mr. Ayende-Rios and found two black socks in his pockets. (Dkt. 18-2 at 613–14) One sock contained seven plastic bags, and another sock contained twelve plastic bags. (Dkt. 18-2 at 472, 613–14) The detective preliminarily tested substances in some of the bags in both socks and determined that the substances were cocaine and heroin. (Dkt. 18-2 at 614) An analyst with FDLE tested a substance in one of the bags in the black socks and determined that the substance was cocaine. (Dkt. 18-2 at 655–56) The analyst also tested the brown substance in the plastic bag that Mr. Ayende-Rios gave to the detective and determined that the substance was heroin and weighed 29.47 grams. (Dkt. 18-2 at 654)[4]

During the defense's case-in-chief, Mr. Ayende-Rios, a five-time convicted felon, testified that the confidential informant pressured him to sell the drugs to the detective. (Dkt. 18-2 at 717, 728) The informant worked with Mr. Ayende-Rios at a coffee shop,

---

[4] On cross-examination, the undercover detective conceded that the confidential informant financially supported two or three people, faced criminal charges and a prison sentence, provided Mr. Ayende-Rios's name to the detective to substantially assist with an investigation, received a letter from the detective to the prosecutor in his criminal case summarizing his assistance, and received a reduced sentence. (Dkt. 18-2 at 501–07, 618–20)

and both were related by marriage. (Dkt. 18-2 at 716, 722–23) The manager of the coffee shop testified that she hired the informant because Mr. Ayende-Rios recommended him. (Dkt. 18-2 at 707)

Mr. Ayende-Rios testified that the informant asked him to sell drugs because the informant owed $15,000.00 or $20,000.00 to drug traffickers who wanted to kill him. (Dkt. 18-2 at 717) The informant also needed $10,000.00 to pay a lawyer to represent him and his girlfriend because he and his girlfriend faced criminal charges and the Florida Department of Children and Families attempted to remove their children from their home. (Dkt. 18-2 at 718–19) Also, Mr. Ayende-Rios needed money because he supported his family, his girlfriend, and his son and owed $9,000.00 in fines for driving without a license. (Dkt. 18-2 at 725–27) Mr. Ayende-Rios initially refused to sell drugs for the informant, but the informant pressured him every day for five or six months and reminded Mr. Ayende-Rios that the informant had given Mr. Ayende-Rios money when he was addicted to drugs and when he was in prison. (Dkt. 18-2 at 720–23)

For the first transaction, Mr. Ayende-Rios obtained half an ounce of cocaine from a male named "Viejo" and tried to give the cocaine to the informant. (Dkt. 18-2 at 733, 739) The informant told Mr. Ayende-Rios that the informant's friend would call Mr. Ayende-Rios and pay $700.00 for the cocaine. (Dkt. 18-2 at 733–34) When Mr. Ayende-Rios received a telephone call, he told the buyer that he could not speak during work. (Dkt. 18-2 at 734–36) Mr. Ayende-Rios felt intimidated when the informant told him that the buyer was an "important guy," and Mr. Ayende-Rios needed to make the buyer "happy." (Dkt. 18-2 at 736) Mr. Ayende-Rios sold the cocaine after work, gave

6

$600.00 to the supplier and $50.00 to the informant, and kept $50.00 for himself. (Dkt. 18-2 at 737)

For the second transaction, Mr. Ayende-Rios obtained heroin from another supplier and completed the sale because the informant told him to give the buyer everything that he needed. (Dkt. 18-2 at 739–40) Mr. Ayende-Rios gave $900.00 to the supplier and $100.00 to the informant and kept $100.00 for himself. (Dkt. 18-2 at 740–41) The informant returned his share to Mr. Ayende-Rios to pay toward the traffic fine that Mr. Ayende-Rios owed. (Dkt. 18-2 at 740–41) Before the third transaction, the buyer repeatedly called and sent messages to Mr. Ayende-Rios. (Dkt. 18-2 at 742–43) Mr. Ayende-Rios obtained thirty grams of heroin from the supplier, gave the buyer the heroin, and expected to receive $3,000.00 from the buyer and pay $2,000.00 to the supplier, but police arrested him before the transaction was complete. (Dkt. 18-2 at 744–47) Mr. Ayende-Rios contended that the suppliers gave him the plastic bags of cocaine and heroin that police found in his pocket because the suppliers knew that Mr. Ayende-Rios needed money and did not earn a lot of money from the drug sales. (Dkt. 18-2 at 747–48) Mr. Ayende-Rios planned to give the plastic bags to the informant. (Dkt. 18-2 at 748–49)

The jury found Mr. Ayende-Rios guilty of the twelve crimes, and the trial court sentenced him to an aggregate forty-year prison sentence. (Dkt. 18-2 at 106–09, 157–68) Mr. Ayende-Rios appealed and argued that the prosecutor failed to rebut his subjective entrapment defense. (Dkt. 18-2 at 922–39) The state appellate court affirmed without a written opinion. (Dkt. 18-2 at 955)

*Post-Conviction.* Mr. Ayende-Rios filed a petition alleging ineffective assistance of appellate counsel, and the state appellate court denied the petition in a decision without a written opinion. (Dkt. 18-2 at 961–72, 974) He also filed a motion for post-conviction relief, the post-conviction court denied relief without an evidentiary hearing, and the state appellate court affirmed in a decision without a written opinion. (Dkt. 18-2 at 983–1032, 1034–37, 1471–72, 1901) His federal petition follows.

## AEDPA STANDARDS

Section 2254 of Title 28 of the United States Code allows a prisoner in custody pursuant to the judgment of a state court to petition a federal court for a writ of habeas corpus on the basis that the prisoner's continued custody violates the U.S. Constitution or federal law. As amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), § 2254 provides a narrow avenue for relief, imposing procedural requirements to invoke federal review and requiring federal courts to give substantial deference to state court judgments that reach the merits of any federally based claims. *See* § 2254(b), (d); *Raulerson v. Warden*, 928 F.3d 987, 995 (11th Cir. 2019).

*Exhaustion of State Court Remedies and Procedural Default.* To seek federal habeas review, a petitioner must exhaust all available state court remedies. § 2254(b)(1)(A). This requires the petitioner to "'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). This can be achieved by the petitioner "indicat[ing] the federal law basis for his claim in a state-court petition or brief,

8

for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Briefing an issue solely as a matter of state law is insufficient. *Nelson v. Sec'y, Fla. Dep't Corrs.*, 610 F. Supp. 2d 1323, 1332 (M.D. Fla. 2009).

Full exhaustion requires a prisoner to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Florida, a complete round of appellate review generally requires filing a Rule 3.850 motion for postconviction relief and an appeal of the denial to one of the state's district courts of appeal. See Fla. R. App. P. 9.141; *see also Tucker v. Dep't Corrs.*, 301 F.3d 1281, 1286 (11th Cir. 2002) (Barkett, J., concurring). A prisoner's failure to present his federal claims to the state court renders those claims procedurally defaulted. *See O'Sullivan*, 526 U.S. at 848; *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

A procedural default can arise in two ways. The first is a failure to exhaust state court remedies as just explained. The second occurs when the state court declines to reach the merits of a claim and denies the claim by applying a state-law procedural default principle—the contemporaneous objection rule, for example. *Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999).

Once a federal claim has been defaulted in state court, "federal habeas review of the claim[ ] is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to

consider the claim[ ] will result in a fundamental miscarriage of justice." *Coleman*,

501 U.S. at 750. Cause requires the petitioner to show that some objective factor external

to the defense led to the default. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Prejudice requires the petitioner to show "not merely that the errors at his trial

[or sentencing] created a *possibility* of prejudice, but that they worked to his *actual* and

substantial disadvantage, infecting his entire trial [or sentencing] with error of

constitutional dimensions." *Brown v. United States*, 720 F.3d 1316, 1333 (11th Cir. 2013)

(quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (italics in original).

A miscarriage of justice sufficient to avoid a procedural default occurs only in

extraordinary cases in which a constitutional violation has led to the conviction of one

who is "actually innocent." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

This requires more than prejudice. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

The petitioner must support the defaulted claim with "new reliable evidence—whether it

be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

evidence—that was not presented at trial." *Id.* at 324. The evidence must then establish

that "it is more likely than not that no reasonable juror would have found petitioner guilty

beyond a reasonable doubt." *Id.* at 327.

**Standard of Review Under AEDPA.** For claims adjudicated on the merits,

AEDPA requires the federal court to afford substantial deference to the decisions of the

state courts. *Raulerson*, 928 F.3d at 996. Under the Act, a federal court will not grant

relief unless the state court's decision denying relief was: (1) "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision is "contrary to" clearly established federal law if the state court "applied a rule in contradiction to governing Supreme Court case law" or "arrived at a result divergent from Supreme Court precedent despite materially indistinguishable facts." *Dill v. Allen*, 488 F.3d 1344, 1353 (11th Cir. 2007). A decision is unreasonable "only if no 'fairminded jurist' could agree with the state court's determination or conclusion." *Holsey v. Warden, Ga. Diag. Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

## DISCUSSION

Mr. Ayende-Rios raises seven grounds for relief—a sufficiency of the evidence due process claim, an ineffective assistance of appellate counsel claim, and five ineffective assistance of trial counsel claims. As explained below, all grounds are meritless.

**Ground One: Sufficiency of the Evidence Due Process Claim.** Mr. Ayende-Rios asserts that his convictions violate federal due process because the prosecutor failed to rebut at trial his subjective and objective entrapment defenses. (Dkt. 13 at 5–8)[5] The Respondent asserts that the claim is unexhausted because Mr. Ayende-Rios failed to alert

---

[5] In Ground One, Ayende-Rios mentions other ineffective assistance of counsel claims, including that trial counsel deficiently performed by not adequately presenting an entrapment defense and by not investigating and obtaining records for telephones used by the informant and the detective. (Dkt. 13 at 5) Ayende-Rios raises these ineffective assistance of counsel claims in Ground Three and Ground Five of his federal petition. (Dkt. 13 at 13, 19)

the state court to the federal nature of his claim in his brief on direct appeal. (Dkt. 17 at 29–30)

In his brief on appeal, Mr. Ayende-Rios recited the standard governing subjective entrapment under Florida law and argued that the prosecutor failed to rebut evidence supporting the subjective defense. (Dkt. 18-2 at 934–38) Because Mr. Ayende-Rios did not argue that the prosecutor failed to rebut evidence supporting an objective defense, his claim based on objective entrapment is unexhausted. *O'Sullivan*, 526 U.S. at 845. Also, subjective entrapment is based on a Florida statute, § 777.201, Fla. Stat., and Mr. Ayende-Rios failed to cite in his brief any authority governing federal due process. Mr. Ayende-Rios referenced two federal district court orders in a string citation in the Standard of Review section of his brief, (Dkt. 18-2 at 933), but failed to both recite the standard governing a sufficiency of the evidence claim under *Jackson v. Virginia*, 443 U.S. 307 (1979), and apply that standard to the facts of his case. Consequently, his claim based on subjective entrapment is also unexhausted. *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005) ("We therefore hold that '[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'") (citations omitted).

If Mr. Ayende-Rios returned to state court to exhaust the claims, the state court would deny the claims as procedurally defaulted. Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."). Consequently, the claims are procedurally defaulted in federal court.

*Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief.").

In his reply, Mr. Ayende-Rios argues that numerous opinions by the U.S. Supreme Court recognize the entrapment defense. (Dkt. 22 at 3) However, those opinions are based on federal common law—not federal constitutional law. *See Keahey v. Marquis*, 978 F.3d 474, 480–81 (6th Cir. 2020) ("Keahey overlooks the reality that *Mathews* is not a constitutional case.") (citing *Mathews v. United States*, 485 U.S. 58 (1988)); *Sosa v. Jones*, 389 F.3d 644, 648 (6th Cir. 2004) ("The discussion of entrapment by the majority in *Russell* clearly demonstrates that the defense of entrapment is not based on due process.") (citing *United States v. Russell*, 411 U.S. 423 (1973)). Even if those opinions are based on federal constitutional law, Mr. Ayende-Rios failed to cite those opinions in his brief on direct appeal. Because Mr. Ayende-Rios fails to demonstrate either cause and prejudice or a miscarriage of justice based on actual innocence to excuse the procedural default, the claims are procedurally barred from federal review. *Coleman*, 501 U.S. at 750. Ground one is therefore dismissed.

**Ground Two: Ineffective Assistance of Appellate Counsel.** Mr. Ayende-Rios asserts that appellate counsel deficiently performed on direct appeal by failing to argue that the face of the record demonstrated that trial counsel was ineffective for not moving for a judgment of acquittal based on subjective entrapment and for not presenting evidence supporting the defense. (Dkt. 13 at 10–11) He further asserts that appellate

counsel deficiently performed by not arguing that comments by the prosecutor in opening and closing denigrated the defense. (Dkt. 13 at 11)

The Respondent asserts that the claims are unexhausted because Mr. Ayende-Rios failed to assert the claims in his petition alleging ineffective assistance of appellate counsel. (Dkt. 17 at 36) In his state petition, Mr. Ayende-Rios asserted that appellate counsel deficiently performed by failing to argue that the face of the record demonstrated that trial counsel was ineffective for not moving to dismiss the charges in the amended information before trial based on objective entrapment. (Dkt. 18-2 at 970–71) He further asserted that appellate counsel was ineffective for not arguing that the jury instruction on subjective entrapment contained erroneous language. (Dkt. 18-2 at 971) Consequently, the claims in Ground Two in his federal petition are unexhausted.

If Mr. Ayende-Rios returned to state court to exhaust the claims, the state appellate court would deny the claims as procedurally defaulted. Fla. R. App. P. 9.141(d)(6)(C). Consequently, the claims are procedurally defaulted on federal habeas. *Snowden*, 135 F.3d at 736. Because Mr. Ayende-Rios fails to demonstrate either cause and prejudice or a miscarriage of justice based on actual innocence to excuse the procedural default, the claim is procedurally barred from federal review. *Coleman*, 501 U.S. at 750. Ground two is therefore dismissed.

***Ground Three: Ineffective Assistance of Trial Counsel for Not Moving for Judgment of Acquittal Based on Subjective Entrapment.*** Mr. Ayende-Rios asserts that trial counsel was ineffective for not moving for a judgment of acquittal based on subjective entrapment. (Dkt. 13 at 13)

The Respondent asserts that the claim is unexhausted because Mr. Ayende-Rios failed to assert the claim in his motion for post-conviction relief. (Dkt. 17 at 39) In his post-conviction motion, Mr. Ayende-Rios asserted that trial counsel was ineffective for not moving for a judgment of acquittal based on subjective entrapment at the end of the prosecutor's case-in-chief. (Dkt. 18-2 at 1004–05) Because Mr. Ayende-Rios did not fundamentally alter the claim on federal habeas, he exhausted the claim in state court. *Kelley v. Sec'y, Dep't Corrs.*, 377 F.3d 1317, 1350 (11th Cir. 2004) (citing *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986)).

The post-conviction court denied the claim as follows (Dkt. 18-2 at 1035) (state court record citations omitted):

> Defendant argues that trial counsel was ineffective for failing to properly raise an entrapment defense. . . . [D]uring counsel's motion for judgment of acquittal, he made a detailed argument as to entrapment. The Court ultimately denied the motion finding that the factual discrepancies should be determined by a jury.

At the end of the defense's case-in-chief, after Ayende-Rios testified in support of his subjective entrapment defense, trial counsel moved for a judgment of acquittal based on subjective entrapment. (Dkt. 18-2 at 1074–81, 1085–87) Under state law, a defendant must first establish inducement and lack of predisposition, before the burden shifts to the prosecutor to rebut that evidence beyond a reasonable doubt. *Hall v. State*, 326 So. 3d 1188, 1189–90 (Fla. 1st DCA 2021). If trial counsel had moved for judgment of acquittal based on subjective entrapment at the end of the prosecutor's case-in-chief, before Mr. Ayende-Rios's testimony, the trial court would have denied the motion because

15

Mr. Ayende-Rios had not yet established inducement and lack of predisposition. Because the record refutes deficient performance and Mr. Ayende-Rios fails to demonstrate prejudice under *Strickland*, the post-conviction court did not unreasonably deny the claim. *Strickland*, 466 U.S. at 687. Ground three is therefore denied.

### Ground Four: Ineffective Assistance for Failing to Object to Jury Instruction on Subjective Entrapment.

Mr. Ayende-Rios asserts that trial counsel was ineffective for not objecting to the jury instruction for subjective entrapment. (Dkt. 13 at 15) The post-conviction court denied the claim as follows (Dkt. 18-2 at 1471–72) (state court record citations omitted):

> Defendant argues that trial counsel was ineffective for failing to object to misleading [and] inaccurate jury instructions. Defendant argues that a "the" was added to the instruction and a "not" was omitted from the subjective entrapment instruction. The State responds that Defendant cannot show prejudice as the jury was provided with the written jury instructions as in *Bright v. State*, 760 So. 2d 287, 288 (Fla. 5th DCA 2000). . . . After review of the State's response, attached and incorporated herein, the Court agrees that the Defendant's motion should be denied.

Rule 3.6(j), Florida Standard Jury Instructions in Criminal Cases, defines subjective entrapment as follows:

> (Defendant) was entrapped if:
>
> 1. [he] was, for the purpose of obtaining evidence of the commission of a crime, induced or encouraged to engage in conduct constituting the crime of (crime charged or any applicable lesser-included offense), and
>
> 2. [he] engaged in such conduct as the direct result of such inducement or encouragement, and

16

3. the person who induced or encouraged [him] was a law enforcement officer or a person engaged in cooperating with or acting as an agent of a law enforcement officer, and

4. **the person who induced or encouraged [him] employed methods of persuasion or inducement which created a substantial risk that the crime would be committed by a person other than one who was ready to commit it**, and

5. **(defendant) was not a person who was ready to commit the crime.**

At trial, the trial judge instructed the jury on subjective entrapment as follows

(Dkt. 18-2 at 893) (bolding added):

> [Court:]        The defendant was entrapped if, one, he was, for the purpose of obtain— obtaining evidence of the commission of the crime was induced, encouraged to engage in conduct constituting the crime of the crimes charged in the information; and, two, he engaged in such a conduct as the direct result of such inducement or encouragement; and, three, the person who induced or encouraged him was a law enforcement officer or a person engaged in cooperation with or acting as an agent of the law enforcement officer; and, four, **the person who induced or encouraged him employed methods of persuasion or inducement which created a substantial risk that the crime would be committed by a person other than the one who was ready to commit it**; and, five, **the defendant was the person who was ready to commit the crime**.

Mr. Ayende-Rios contends that the trial judge erroneously instructed the jury on the fourth and fifth element of entrapment. (Dkt. 13 at 15–16) The trial judge tracked

the language of the fourth element in the standard instruction. Consequently, his claim based on the fourth element is refuted by the record.

Even though the trial judge omitted the word "not" from the fifth element, the written instructions correctly stated the element as follows (Dkt. 18-2 at 1177) (bolding added): "Defendant was **not** a person who was ready to commit the crime." Before deliberations, the trial judge gave the jury a copy of the written instructions. (Dkt. 18-2 at 908) Also, after the trial judge's misstatement of the fifth element, the trial judge clarified that the prosecutor must prove that Mr. Ayende-Rios was predisposed to commit the crimes charged (Dkt. 18-2 at 893–94):

> [Court:]    It is not entrapment if the defendant had the predis—predisposition to commit the crime charged. The defendant had the previous—[predisposition] if before any law enforcement officer or person acting for the officer persuaded, induced, or lured the defendant, [he] had a readiness or willingness to commit the crime charged if the opportunity [ ] presented itself. It is also not entrapment merely because [a] law enforcement officer in [a] good faith attempt to detect a crime, A, provided the defendant this opportunity, means, and facilities to commit the offense which the defendant intended to commit and would have committed otherwise; or, B, used tricks, decoys, or subterfuge to expose the defendant's criminal acts; or, C, was present and pretending to aid or assist in the commission of the offense.
>
> On the issue of entrapment, the defendant must prove to you by greater weight of the evidence that a law

> enforcement officer or agent induced or
> encouraged the crime charged.
>
> Greater weight of the evidence means
> that evidence which is more persuasive
> and convincing.
>
> If the defendant does so, the State—then
> the burden shifts to the State. The State
> would—must establish by—beyond a
> reasonable doubt that the defendant was
> predisposed to commit the crime
> charged. The State must prove the
> defendant's predisposition to commit
> the crime charged existed prior to and
> independent of the inducement or
> encouragement.

Because both the written instructions and the subsequent oral instructions

clarified the trial judge's misstatement concerning predisposition, Mr. Ayende-Rios

does not demonstrate a reasonable probability that the outcome at trial would change if

trial counsel objected, and the post-conviction court did not unreasonably deny the

claim. *Strickland*, 466 U.S. at 694. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) ("It is

well established that the instruction 'may not be judged in artificial isolation,' but must

be considered in the context of the instructions as a whole and the trial record.")

(citation omitted). Ground four is therefore denied.

***Ground Five: Ineffective Assistance of Counsel for Failing to Investigate and***

***Call Exculpatory Witnesses.*** Mr. Ayende-Rios asserts that trial counsel was ineffective

for failing to move for disclosure of the confidential informant's identity and for failing

to call to testify at trial the confidential informant, Detective Callahan, and Vanessa

Quinones. (Dkt. 13 at 17) ("sub-claim A") He further asserts that trial counsel was

ineffective for failing to obtain records showing telephone calls and text messages between the confidential informant, Detective Saenz, and Mr. Ayende-Rios. (Dkt. 13 at 18) ("sub-claim B")

### Sub-claim A—Confidential Informant

Mr. Ayende-Rios asserts that trial counsel was ineffective for failing to move for disclosure of the identity of the confidential informant and for failing to call the confidential informant as a witness at trial. (Dkt. 13 at 17) The post-conviction denied the claim as follows (Dkt. 18-2 at 1035) (state court record citations omitted):

> Defendant argues that trial counsel was ineffective for failing to move to identify the confidential informant. The record indicates that the Defendant and counsel were aware of the identity of the confidential informant. Defendant testified that it was Mr. DeJesus, or "KiKi" who pressured him into selling the drugs. In fact, counsel even informed the Court that he attempted to locate Mr. DeJesus prior to trial to no avail and that they were aware that Mr. DeJesus was the confidential informant. The Court finds that the Defendant has failed to establish deficient performance or prejudice.

At trial, Mr. Ayende-Rios testified that he worked at a coffee shop with Luis DeJesus, whose nickname was "Kiki," for over a year. (Dkt. 18-2 at 715–16) Mr. Ayende-Rios introduced Mr. DeJesus to his boss and recommended that his boss hire Mr. DeJesus. (Dkt. 18-2 at 716) Mr. Ayende-Rios claimed that Mr. DeJesus pressured him to sell drugs because Mr. DeJesus owed money to people who wanted to kill Mr. DeJesus. (Dkt. 18-2 at 717) Mr. DeJesus also told Mr. Ayende-Rios that he needed money to hire an attorney to represent him and his wife in both a criminal case

and a dependency case. (Dkt. 18-2 at 718–19) Mr. DeJesus pressured Mr. Ayende-Rios

for five or six months. (Dkt. 18-2 at 720–21)

At sentencing, Mr. Ayende-Rios, under oath, informed the trial judge that he had

filed a *pro se* motion to disclose the informant's identity and admitted that trial counsel

had attempted to locate the confidential informant (Dkt. 18-2 at 130):

> [Mr. Ayende-Rios:] . . . There were things that were very
> important in my case. There was a time
> when he was trying to find the CI. So
> when he would put the name of the CI
> in Corrections there's about eleven or
> twelve people with the same name. He
> showed me the photos, and I'm telling
> you the truth. He really did try to find
> [the informant], but the government is
> trying to protect him. So we never had
> the opportunity to bring him.

The trial judge asked trial counsel why he did not adopt the *pro se* motion

(Dkt. 18-2 at 141–42):

> [Court:]          Alright. But the motion to dismiss and
>                   a motion to disclose a CI or
>                   what-have-you, the defense, you as his
>                   attorney did not adopt any of those
>                   motions?
>
> [Counsel:]        No. I didn't adopt the motion to disclose
>                   CI. As Mr. Rios testi—I mean,
>                   explained to you, we investigated to see
>                   if we could find the CI. In a motion to
>                   disclose CI there's lots of different
>                   issues. One, it's hard to get that done
>                   because the CI was not an eyewitness to
>                   these charges. Generally, they're used to
>                   establish probable cause. It's hard to get
>                   disclosure. I think you could move for
>                   some sort of *in camera* thing. But

|  | there's lots of issues like be careful what you ask for, you may get your wish. And these are strategy things. |
|---|---|
| [Court:] | Alright. And he did—Mr. Rios conceded that you have attempted to locate the CI. |
| [Counsel:] | Right. |
| [Court:] | You looked at photographs or what-have-you. So he's not saying you didn't— |
| [Counsel:] | No. We made extensive efforts on our side to find the CI. |
| [Court:] | But at the end of the day it was testified to that the CI, at least to the defense's conclusion, was Kiki. |
| [Counsel:] | Yes, sir. |
| [Court:] | Okay. So the defense at the end of the day knew who the CI was. |
| [Counsel:] | Yeah. I was very comfortable with that conclusion. |
| [Court:] | And Mr. Rios testified regarding Kiki's involvement as far as the defense's defense of entrapment. Alright. I would treat this inquiry as a *Nelson*[6] inquiry or semi-*Nelson* inquiry. Ms. Maxwell, if you'll just indicate to that effect. Anything else, Mr. Mack, regarding |

---

[6] *See Nelson v. State*, 274 So. 2d 256, 258 (Fla. 4th DCA 1973) ("[W]here a defendant, before the commencement of trial, makes it appear to the trial judge that he desires to discharge his court appointed counsel, the trial judge, in order to protect the indigent's right to effective counsel, should make an inquiry of the defendant as to the reason for the request to discharge.").

<table>
<tr><td></td><td>issues raised by Mr. Rios that you would like to offer, sir?</td></tr>
<tr><td>[Counsel:]</td><td>No, sir. I mean, I don't want to get into [it] too much, but I felt it's fair to explain that he's bringing up things that weren't done. There were certain reasons why we did certain things or didn't. These things were all thought through. It wasn't like gee, it's not—no sense in finding out anything about the CI. We did our thing to try to find him in our investigation. Filing a motion for CI is a tough one to get them to disclose and I just didn't think that was the way to go.</td></tr>
<tr><td>[Court:]</td><td>And, just for the record—</td></tr>
<tr><td>[Counsel:]</td><td>—even if they could have disclosed—</td></tr>
<tr><td>[Court:]</td><td>Okay.</td></tr>
<tr><td>[Counsel:]</td><td>—Who knows what the CI would say, right? We didn't know these things, so I think we played it the right way.</td></tr>
<tr><td>. . .</td><td></td></tr>
<tr><td>[Court:]</td><td>. . . Alright. I will find that if need be that Mr. Mack was, in fact, effective and Mr. Rios has raised some concerns suggesting that his attorney didn't do certain things. I will find that there is some contradiction in the presentation by Mr. Rios to include obviously regarding the disclosure of a CI that he—it sounds like he knows who the CI is and knew prior to trial.</td></tr>
</table>

The Court presumes the state court's findings are correct, and Mr. Ayende-Rios

fails to present clear and convincing evidence to rebut the findings. 28 U.S.C.

§ 2254(e)(2). Because Mr. Ayende-Rios knew the identity of the informant before trial, and trial counsel attempted to locate and interview the informant before trial, the record refutes Mr. Ayende-Rios's claim. *Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant.").

Also, trial counsel did not move for disclosure of the confidential informant because he was concerned that the confidential informant's testimony would incriminate Mr. Ayende-Rios. Because "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation," *Strickland*, 466 U.S. at 690–91, and Mr. Ayende-Rios failed to rebut the presumption that trial counsel acted reasonably by not moving for disclosure of the informant, the post-conviction court did not unreasonably deny the claim.

Lastly, Mr. Ayende-Rios speculated that the confidential informant would testify in the exculpatory manner that he contended. Because Mr. Ayende-Rios did not support his claim with an affidavit or testimony by the confidential informant, his claim was speculative, and the post-conviction court did not unreasonably deny the claim. *McKiver v. Sec'y, Fla. Dep't Corrs.*, 991 F.3d 1357, 1365 (11th Cir. 2021) ("[*Strickland*'s prejudice] burden is particularly 'heavy where the petitioner alleges ineffective assistance in failing to call a witness because often allegations of what

a witness would have testified to are largely speculative.'") (quoting *Sullivan v.
DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006)).

### Sub-claim A—Detective Callahan and Vanessa Quinones

Mr. Ayende-Rios asserts that trial counsel was ineffective for failing to call to
testify at trial Detective Callahan and Vanessa Quinones. (Dkt. 13 at 17) The
post-conviction court denied the claim as follows (Dkt. 18-2 at 1471–72)
(state court record citations omitted):

> Defendant argues that trial counsel was ineffective for
> failing to call Detective Callahan and Vanessa Quinones as
> witnesses. As to Detective Callahan, the State responded that
> that only reason to depose this witness would be to unmask
> the identity of the confidential informant and that he would
> not testify to anything that Detectives Jones and Saenz
> hadn't already testified about. As to Ms. Quinones, the State
> argues that there would be no benefit to her testimony as the
> record shows that the Defendant was not an "unwary
> innocent." . . . After review of the State's response, attached
> and incorporated herein, the Court agrees that the
> Defendant's motion should be denied.

In response to Mr. Ayende-Rios's motion for post-conviction relief, the
prosecutor argued that Mr. Ayende-Rios speculated that Detective Callahan and
Ms. Quinones would testify in the manner that he contended. (Dkt. 18-2 at 1486–89)
Because Mr. Ayende-Rios did not support his claim with either testimony or an
affidavit by Detective Callahan and Ms. Quinones (Dkt. 18-2 at 1020–22),
the post-conviction court did not unreasonably deny the claim. *McKiver*, 991 F.3d at
1365 ("[The Eleventh Circuit has] held that a petitioner's own assertions about whether

and how a witness would have testified are usually not enough to establish prejudice from the failure to interview or call that witness.").

Also, evidence at trial proved that Mr. Ayende-Rios offered to sell the undercover detective heroin at a reduced price, suggested that the cocaine that he sold the detective was better in "rock" form, offered the detective two additional grams of heroin free to encourage future purchases, and asked the detective to travel with him to Clermont to get two ounces of cocaine. (Dkt. 18-2 at 460–62, 467–69, 481–82, 489–90) During his conversations with the detective, Mr. Ayende-Rios used a Puerto Rican slang word for heroin, knew the average price of heroin and cocaine, and asked the detective to sample some of the cocaine that he sold. (Dkt. 18-2 at 460–62, 467–69) When the detective told Mr. Ayende-Rios that he may purchase more heroin if he likes the quality of the heroin that Mr. Ayende-Rios sells, Mr. Ayende-Rios boasted that no one had ever complained about the quality of heroin that he sold. (Dkt. 18-2 at 596–97) Mr. Ayende-Rios testified that he went to his own suppliers to get the drugs. (Dkt. 18-2 at 733, 739–40, 744–47) Also, police found nineteen individual bags of drugs in Mr. Ayende-Rios's pockets after his arrest. (Dkt. 18-2 at 472, 613–14)

Because this overwhelming, unrebutted evidence proved that Mr. Ayende-Rios was predisposed to engage in the drug crimes and defeated the subjective entrapment defense, the outcome at trial would not change if trial counsel called Detective Callahan and Ms. Quinones to testify, and the post-conviction court did not unreasonably deny the claim. *Harris v. State*, 279 So. 3d 268, 270 (Fla. 5th DCA 2019) ("In rebutting the defendant's evidence of lack of predisposition, the prosecution may make an

appropriate and searching inquiry into the conduct of the accused and present evidence of the accused's prior criminal history, even though such evidence is normally inadmissible.") (citation and internal quotations omitted); *Blanco v. State*, 218 So. 3d 939, 947 (Fla. 3d DCA 2017) ("[A] defendant's use of drug-trade jargon at the post-inducement drug transaction can form the basis of a jury's finding that the defendant was an experienced and willing drug dealer.").

**Sub-claim B**

Mr. Ayende-Rios asserts that trial counsel was ineffective for failing to obtain records showing telephone calls and text messages between Mr. DeJesus, Detective Saenz, and Mr. Ayende-Rios. (Dkt. 13 at 18). The Respondent asserts that the claims concerning communication between Mr. Ayende-Rios and Detective Saenz and between Mr. DeJesus and Detective Saenz are unexhausted. (Dkt. 17 at 41 n.7) However, Mr. Ayende-Rios raised sufficiently similar claims in ground eleven of his post-conviction motion (Dkt. 18-2 at 1027–28) and in his brief on appeal. (Dkt. 18-2 at 1886–89) Consequently, Mr. Ayende-Rios exhausted the claims for federal review. The post-conviction court denied the claims as follows:

> Defendant argues that trial counsel was ineffective for failing to show that Detective Saenz repeatedly called the Defendant on January 8, 2015. The record shows that Detective Saenz testified that he called the Defendant once prior to the January 8 transaction. Defendant testified that the Detective called him twice and Defendant hung up on him. During a third phone call the Defendant agreed to the transaction. Trial counsel was only able to elicit from the Defendant that Detective Saenz called multiple times. Defendant has failed to establish deficient performance or prejudice.

27

(Dkt. 18-2 at 1036) (state court record citations omitted)

Defendant argues that trial counsel was ineffective for failing to obtain text [and] phone records. The State argues that in light of the overwhelming evidence showing that the Defendant controlled the transactions, any alleged inducement made by the informant would have changed nothing at trial. . . . After review of the State's response, attached and incorporated herein, the Court agrees that the Defendant's motion should be denied.

(Dkt. 18-2 at 1472)

In his post-conviction motion, Mr. Ayende-Rios failed to support his claim with the records showing telephone calls and text messages between Mr. DeJesus, Detective Saenz, and Mr. Ayende-Rios. He instead speculated that records would demonstrate that Mr. DeJesus texted and called him numerous times for six months to pressure him to sell the drugs. (Dkt. 18-2 at 1024–25) He further speculated that records would demonstrate that Detective Saenz exerted more pressure by repeatedly calling him before he first sold drugs to the detective. (Dkt. 18-2 at 1028) "Speculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation." *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985).

Also, Mr. Ayende-Rios testified at trial that he spoke with the detective three times before the first drug sale. He testified that the detective called around 11:00 A.M., and Mr. Ayende-Rios said that he could not speak or meet because he was at work. (Dkt. 18-2 at 1070–71) The detective called a second time, and Mr. Ayende-Rios repeated that he could not meet because he was at work. (Dkt. 18-2 at 1071–72)

28

Mr. DeJesus confronted Mr. Ayende-Rios about refusing to speak with the detective, and Mr. Ayende-Rios called the detective and arranged to meet at 5:00 P.M. (Dkt. 18-2 at 1072) Because Mr. Ayende-Rios did not testify that the detective repeatedly called him that day, the record refuted the claim.

Lastly, as explained above, evidence at trial proved that Mr. Ayende-Rios was predisposed to engage in the drug transactions. Even if trial counsel presented additional evidence of inducement, the overwhelming, unrebutted evidence of predisposition defeated a subjective entrapment defense, and the post-conviction court did not unreasonably deny the claim. Ground five is therefore denied. *Harris*, 279 So. 3d at 270. *Gonzalez v. State*, 571 So. 2d 1346, 1350 (Fla. 3d DCA 1990) ("Predisposition to commit a crime is shown if the intent to commit the crime *originates* in the mind of the accused and not in the minds of the government. . . . Evidence of predisposition is akin to character evidence relating to a defendant's propensity to commit a crime.") (italics in original).

**Ground Six: Ineffective Assistance for Failing to Object to Comments by the Prosecutor.** Mr. Ayende-Rios asserts that trial counsel was ineffective for failing to object to comments by the prosecutor during opening and closing. (Dkt. 13 at 22–23) He contends that trial counsel should have objected to comments that mischaracterized him as "an undesirable and dangerous person" ("sub-claim A"), that denigrated his theory of defense ("sub-claim B"), that described him as a drug dealer ("sub-claim C"), and that shifted or mischaracterized the burden of proof. ("sub-claim D") The

Respondent asserts that some sub-claims are unexhausted and time-barred. (Dkt. 17 at 45–48)

A one-year statute of limitation applies to a § 2254 petition for a writ of habeas corpus. 28 U.S.C. § 2244(d)(1). For limitation purposes, "[a]n amendment to a pleading relates back to the date of the original pleading when: the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "An amended habeas petition [ ] does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005).

For an ineffective assistance of counsel claim based on trial counsel's failure to object to a comment by the prosecutor, the limitation period started when "the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). On June 16, 2017, the state appellate court affirmed Mr. Ayende-Rios's convictions and sentences in a decision without a written opinion. (Dkt. 18-2 at 955) The state supreme court lacked jurisdiction to review the unelaborated decision, Mr. Ayende-Rios did not seek further review in the U.S. Supreme Court, and the time to seek that review expired ninety days later— September 15, 2017. Sup. Ct. R. 13(a). *Jenkins v. State*, 385 So. 2d 1356, 1359 (Fla. 1980). The limitation period started to run the next day. *Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002).

"[A] properly filed application for State post-conviction or other collateral review" tolls the limitation period. 28 U.S.C. § 2244(d)(2). On May 3, 2018, after 229 days had run on the limitation period, Mr. Ayende-Rios placed in the hands of prison officials for mailing a petition alleging ineffective assistance of appellate counsel. (Dkt. 18-2 at 961–72) On June 26, 2018, the state appellate court denied the petition in a decision without a written opinion (Dkt. 18-2 at 974), the state supreme court lacked jurisdiction to review the unelaborated decision, and the limitation period tolled until July 12, 2018, when the time to file a motion for rehearing expired. *Jenkins*, 385 So. 2d at 1359. *Nix v. Sec'y, Dep't Corrs.*, 393 F.3d 1235, 1237 (11th Cir. 2004).

On September 12, 2018, after sixty-one more days ran on the limitation period, Mr. Ayende-Rios placed in the hands of prison officials for mailing a motion for post-conviction relief. (Dkt. 18-2 at 983–1033) The post-conviction court denied the motion (Dkt. 18-2 at 1471–72), Mr. Ayende-Rios appealed, the state appellate court affirmed (Dkt. 18-2 at 1901), and the limitation period tolled until March 10, 2020, when mandate issued on appeal. (Dkt. 18-2 at 1903) *Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000). Another forty-nine days ran on the limitation period until April 29, 2020, when Mr. Ayende-Rios placed in the hands of prison officials for mailing his federal petition. (Dkt. 1) When Mr. Ayende-Rios filed his federal petition, a total of 339 days had run on the limitation period.

A § 2254 petition does not toll the limitation period. *Duncan v. Walker*, 533 U.S. 167, 181–82 (2001). On January 29, 2021, 274 days after filing his initial federal petition, Mr. Ayende-Rios filed an amended petition. (Dkt. 13 at 1)

31

Consequently, a new claim in the amended petition that does not relate back to a claim in the initial petition is time-barred because more than one year ran on the limitation period before Mr. Ayende-Rios raised the new claim. *See Davenport v. United States*, 217 F.3d 1341, 1346 (11th Cir. 2000).

### Sub-claim A

Mr. Ayende-Rios asserts that trial counsel was ineffective for failing object to comments by the prosecutor that mischaracterized him as "an undesirable and dangerous person." (Dkt. 13 at 22) The Respondent asserts that the sub-claim is time-barred. (Dkt. 17 at 46–47) In his initial petition, Mr. Ayende-Rios failed to assert that trial counsel was ineffective for failing to object to these comments. (Dkt. 1 at 17) Because the sub-claim alleges new and different operative facts not alleged in the initial petition, sub-claim A is time-barred. *Mayle*, 545 U.S. at 664.

### Sub-claim B

Mr. Ayende-Rios asserts that trial counsel was ineffective for failing to object to comments that denigrated his theory of defense, including that Mr. Ayende-Rios would say anything to try to trick the jury ("Comment One") and that the jury should consider that Mr. Ayende-Rios is a "five-time convicted felon." ("Comment Two") (Dkt. 13 at 22) The Respondent asserts that the sub-claim based on Comment Two is time-barred. (Dkt. 17 at 46–47) In his initial petition, Mr. Ayende-Rios failed to assert that trial counsel was ineffective for failing to object to the prosecutor's comment that the jury should consider that Mr. Ayende-Rios is a "five-time convicted felon." (Dkt. 1 at 17)

Consequently, sub-claim B based on Comment Two is time-barred. *Mayle*,

545 U.S. at 664.

For the sub-claim based on Comment One, Mr. Ayende-Rios asserts that trial

counsel should have objected to the following comment by the prosecutor (Dkt. 18-2 at

818–19) (bolding added):

> [Prosecutor:] **And now [Mr. Ayende-Rios] wants to come in here, when he is the only person that has anything to lose in this case**—and that's yet another thing that Judge Harb will read to you-all, does the person have some interest in how the case should be decided? **This person, Mario Rios, has all of the concern in the world about what happens to him. So he'll say and do what he needs to do to put in front of you[—]to try to trick you and convince you that you should find him not guilty and not hold him accountable for what he chose to do.** But I submit to you and I ask you to do the just thing that the evidence cries out for so when you leave here today, you will know and feel that you did the right thing because of the evidence. That's what it comes down to, ladies and gentlemen.

The post-conviction court denied the ineffective assistance of counsel claim as

follows (Dkt. 18-2 at 1471–72):

> Defendant argues that trial counsel was ineffective for failing to object to improper comments made in closing. As to the first argument, the State argues that the [prosecutor] was following the jury instruction and that the comment did not, cumulatively, amount to prejudice as in *Servis v. State*, 855 So. 2d 1190, 1194 (Fla. 5th DCA 2003). . . . After

> review of the State's response, attached and incorporated
> herein, the Court agrees that the Defendant's motion should
> be denied.

Mr. Ayende-Rios testified at trial, and the trial court instructed the jury

(Dkt. 18-2 at 898): "The defendant in this case has become a witness. You should apply

the same rules and consideration to his testimony like you would apply to any other

witness[ ]." The trial court further instructed the jury to consider when evaluating a

witness's testimony whether "the witness [had] some interest in how the case should be

decided." (Dkt. 18-2 at 897) Mr. Ayende-Rios faced 145 years in prison if convicted of

the twelve charges. (Dkt. 18-2 at 171) Because the prosecutor permissibly commented

on Mr. Ayende-Rios's credibility as a witness, an objection would not succeed, and the

post-conviction court did not unreasonably deny the sub-claim. *Pinkney v. Sec'y, Dep't*

*Corrs.*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have

performed deficiently for failing to perform a futile act, one that would not have gotten

his client any relief."); *Chandler v. State*, 702 So. 2d 186, 195–96 (Fla. 1997) ("The

credibility of a criminal defendant who takes the stand and testifies may be attacked in

the same manner as any other witness.") (quoting Charles W. Ehrhardt, *Florida*

*Evidence* §608.1 at 385 (1997 ed.)).

**Sub-claim C**

Mr. Ayende-Rios asserts that trial counsel was ineffective for failing to object to

comments by the prosecutor that described him as a drug dealer, including that

Mr. Ayende-Rios earned more than forty dollars from the first cocaine sale ("Comment

One"), that Mr. Ayende-Rios sold drugs for thousands of dollars before and after the

sales charged in this case ("Comment Two"), and that Mr. Ayende-Rios sold primarily heroin ("Comment Three"). (Dkt. 13 at 22–23)

The Respondent asserts that the sub-claim based on Comment Two and Comment Three is unexhausted because Mr. Ayende-Rios failed to raise the sub-claim in his motion for post-conviction relief. (Dkt. 17 at 47) Mr. Ayende-Rios failed to raise the sub-claim based on both comments in his post-conviction motion (Dkt. 18-2 at 1023–24) and raised the sub-claim based on Comment Two for the first time in his brief on appeal. (Dkt. 18-2 at 1885) "A party cannot raise a new claim for the first time in an appeal from a post-conviction motion in a Florida appellate court." *Harris v. Sec'y, Fla. Dep't Corrs.*, 709 F. App'x 667, 668 (11th Cir. 2018) (citing *Mendoza v. State*, 87 So. 3d 644, 660 (Fla. 2011)). If Mr. Ayende-Rios returned to state court to raise the sub-claim, the post-conviction court would deny the claim as untimely and procedurally defaulted. Fla. R. Crim. P. 3.850(b), (h). Consequently, the sub-claim based on Comment Two and Comment Three is procedurally defaulted in federal court. *Snowden*, 135 F.3d at 736. Because Mr. Ayende-Rios fails to demonstrate either cause and prejudice or a miscarriage of justice based on actual innocence, the sub-claim is procedurally barred from federal review. (Dkt. 22 at 28–32) *Coleman*, 501 U.S. at 750.

For the sub-claim based on Comment One, Mr. Ayende-Rios asserts that trial counsel should have objected to the following comment by the prosecutor (Dkt. 18-2 at 818) (bolding added):

> [Prosecutor:]     If all that he was doing was working
>                   forty hours a week at the coffee
>                   company, then that would be

> commendable. That would be respectful.
> That's what citizens should do, ladies
> and gentlemen, is work. Work honest
> jobs. But this man, obviously, wanted
> more money than eight dollars an hour
> could provide. And even if you believe
> that on one of those deals he only made
> fifty dollars profit, **which I submit to
> you he made a lot more than that, but
> even if he only made fifty dollars
> profit**, that is, basically, seven hours of
> work or a whole day's work for,
> basically, two minutes of slanging some
> dope on the street, putting those things
> on the street.

The post-conviction court denied the ineffective assistance of counsel claim as follows (Dkt. 18-2 at 1471–72):

> Defendant argues that trial counsel was ineffective for
> failing to object to improper comments made in closing. . . .
> As to the argument regarding the cost of the drugs, the State
> argues that the prosecutor was making inferences based
> upon the evidence . . . . After review of the State's response,
> attached and incorporated herein, the Court agrees that the
> Defendant's motion should be denied.

At trial, the undercover detective testified that, after Mr. Ayende-Rios sold half an ounce of cocaine for seven hundred dollars, Mr. Ayende-Rios told him that he earned only fifty dollars from the sale. (Dkt. 18-2 at 1601–02, 1662) The detective also testified that Mr. Ayende-Rios told him that he could sell half a kilogram of cocaine, or seventeen-and-a-half ounces, for $16,000.00. (Dkt. 18-2 at 468) After Mr. Ayende-Rios's arrest, police found in his pocket small bags containing heroin and cocaine. (Dkt. 18-2 at 1635–36) Mr. Ayende-Rios testified that he earned between $350.00 and $500.00 every week working at the coffee shop. (Dkt. 18-2 at 1801–03)

36

The prosecutor drew a reasonable inference from this evidence that Mr. Ayende-Rios regularly sold drugs for money, that Mr. Ayende-Rios did not share with Mr. DeJesus his profit from the cocaine sale, and that Mr. Ayende-Rios earned much more than fifty dollars from the sale of half an ounce of cocaine. Because an objection to the comment would not succeed, the post-conviction court did not unreasonably deny the sub-claim. *Pinkney*, 876 F.3d at 1297. *Roberts v. State*, 279 So. 3d 271, 280 (Fla. 1st DCA 2019) ("A prosecutor may comment on the credibility of a defendant when the defendant testifies and when the prosecutor limits the comment to facts that are in record or may be reasonably inferred from the record.").

**Sub-claim D**

Mr. Ayende-Rios asserts that trial counsel was ineffective for failing to object to comments by the prosecutor that shifted or mischaracterized the burden of proof. (Dkt. 13 at 23) The Respondent asserts that the sub-claim is time-barred. (Dkt. 17 at 48) In his initial petition, Mr. Ayende-Rios failed to assert that trial counsel was ineffective for failing to object to the comments that he describes as shifting or mischaracterizing the burden of proof. (Dkt. 1 at 17) Because the sub-claim alleges new and different operative facts not alleged in the initial petition, sub-claim D is time-barred. *Mayle*, 545 U.S. at 664. Ground six is therefore dismissed-in-part and denied-in-part.

***Ground Seven: Ineffective Assistance for Failing to Challenge During Trial the Chain of Custody of the Drugs Admitted into Evidence.*** Mr. Ayende-Rios asserts that trial counsel was ineffective for failing to "challenge and reveal, through cross-examination, the inconsistencies [that] existed between the testimony of Detective

Saenz and Detective Jones regarding their handling of evidence, testing, and the chain of custody of the evidence that was relied upon to obtain a conviction in this case." (Dkt. 13 at 25) He contends that Detective Jones testified that Detective Saenz was present when Detective Jones preliminarily tested the drugs that he purchased from Mr. Ayende-Rios, and Detective Saenz testified that he was not present. (Dkt. 13 at 25) He further contends that evidence, including laboratory reports, contradicted testimony by the detectives about the small bags of drugs found in Mr. Ayende-Rios's pocket after his arrest. (Dkt. 13 at 25–27) He asserts that trial counsel deficiently performed by not arguing these discrepancies to the jury, by not objecting to the introduction of the drugs into evidence, and by not moving to suppress the drugs. (Dkt. 13 at 25–27)

The Respondent asserts that the claim is unexhausted. (Dkt. 17 at 49–50) In his post-conviction motion, Mr. Ayende-Rios asserted that trial counsel was ineffective for failing to "illustrate to the jury questionable chain of custody issues regarding the subject drugs and inconsistencies in the trial testimonies of Detectives Saenz and Jones" and "move[ ] for a judgment of acquittal based on evidence tampering and chain of custody violations." (Dkt. 18-2 at 1025–27) Because a *pro se* motion is construed liberally, Mr. Ayende-Rios adequately exhausted the claim. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

The Respondent further asserts that Mr. Ayende-Rios submits with his amended petition two laboratory reports that he failed to submit to the state court with his motion for post-conviction relief. (Dkt. 17 at 49–50) Mr. Ayende-Rios submitted the reports with his motion for rehearing (Dkt. 18-2 at 1851–52, 1854–55) and his brief on appeal.

(Dkt. 18-2 at 1893–89) Neither the post-conviction court nor the state appellate court struck the reports from the record. (Dkt. 18-2 at 1857, 1864) Consequently, the two laboratory reports are part of the relevant record on federal habeas. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."). Fla. R. App. P. 9.141(b)(2)(A) (defining the record on post-conviction appeal as "the motion, response, reply, order on the motion, motion for rehearing, response, reply, order on the motion for rehearing, and attachments to any of the foregoing, together with the certified copy of the notice of appeal").

The post-conviction court denied the claim as follows (Dkt. 18-2 at 1472) (state court record citations omitted):

> Defendant argues that trial counsel was ineffective for failing to object based upon a chain of custody argument. The State points out that Detectives Jones and Saenz identified the evidence taken from Defendant and [explained] how it was disposed of. Additionally, the State argues that the judge would not have granted a directed verdict based on the evidence presented. After review of the State's response, attached and incorporated herein, the Court agrees that the Defendant's motion should be denied.

Whether an objection based on lack of chain of custody would succeed is an issue of state law, and a state court's determination of state law receives deference in federal court. *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985) ("The federal courts must defer to a state court's interpretation of its own rules of evidence and procedure.").

The amended information charged Mr. Ayende-Rios with sale of cocaine on January 8, 2015 (Count Three), possession with intent to sell cocaine on January 8, 2015 (Count Four), sale of four grams or more of heroin on January 9, 2015 (Count Six), trafficking twenty-eight grams or more of heroin on January 15, 2015 (Count Ten), and possession with intent to sell or deliver cocaine on January 15, 2015 (Count Eleven). (Dkt. 18-2 at 27–31)

At trial, the undercover detective, Detective Saenz, identified the cocaine that he purchased from Mr. Ayende-Rios on January 8, 2015, and the trial court admitted the cocaine into evidence without objection. (Dkt. 18-2 at 463–64) Detective Saenz identified the ten small bags of heroin that he purchased from Mr. Ayende-Rios on January 9, 2015, and the trial court admitted the heroin into evidence without objection. (Dkt. 18-2 at 473–74) Detective Saenz identified a black bag containing heroin that Mr. Ayende-Rios offered to sell him on January 15, 2015, and the trial court admitted the heroin into evidence without objection. (Dkt. 18-2 at 488–89) Detective Saenz identified the small bags of heroin and cocaine that police found in Mr. Ayende-Rios's pocket after his arrest on January 15, 2015, and the trial court admitted the bags into evidence without objection. (Dkt. 18-2 at 493–94)

Detective Jones examined all drugs that the trial court admitted at trial, confirmed that he sent them to FDLE for testing after Detective Saenz gave them to him, and testified that the drugs were in substantially the same condition when FDLE returned them to him. (Dkt. 18-2 at 607–15)

Under Florida law, "[i]n order to demonstrate probable tampering, the party attempting to bar the evidence must show that there was a probability that the evidence was tampered with—the mere possibility is insufficient." *Armstrong v. State*, 73 So. 3d 155, 171 (Fla. 2011). "Once the party moving to bar the evidence has met its burden, the burden shifts to the nonmoving party to establish a proper chain of custody or submit other evidence that tampering did not occur." *Armstrong*, 73 So. 3d at 171.

In his post-conviction motion, Mr. Ayende-Rios contended that Detective Jones stated that he preliminarily tested the drugs seized during Mr. Ayende-Rios's arrest in front of Detective Saenz, and Detective Saenz denied that he was present when Detective Jones tested the drugs. (Dkt. 18-2 at 1025–26) Also, Mr. Ayende-Rios contended that Detective Jones stated that he seized twelve bags of cocaine and seven bags of heroin and later testified that he seized one bag of heroin and eighteen bags of cocaine. (Dkt. 18-2 at 1026) Lastly, Mr. Ayende-Rios contended that Detective Jones stated that he sent eleven items for testing, and the evidence showed that FDLE received twelve items and tested only one item. (Dkt. 18-2 at 1026)

At trial, trial counsel cross-examined the detective about these discrepancies as follows (Dkt. 18-2 at 635–39):

> [Trial counsel:]   Okay. You located seven baggies containing a white powdery substance in one pocket?
>
> [Detective Jones:]   Uh-huh. Yes, sir.
>
> [Trial counsel:]   And the other sock you located—well, I meant—seven baggies were in one sock?

41

[Detective Jones:]     Yes, sir.

[Trial counsel:]     And twelve baggies were in the other
                     sock, is that correct?

[Detective Jones:]     Yes, sir.

[Trial counsel:]     Those had a tan in color substance?

[Detective Jones:]     Yes.

[Trial counsel:]     And, again, you indicated that those
                     were taken to the office and you tested
                     those there?

[Detective Jones:]     Uh-huh.

[Trial counsel:]     Am I correct?

[Detective Jones:]     Yes, sir.

[Trial counsel:]     Okay. Now—and did I hear you
                     correctly in regard to your direct
                     examination that eighteen of the baggies
                     on your field test that you performed
                     were positive for cocaine?

[Detective Jones:]     Yes, sir.

[Trial counsel:]     One baggie for heroin?

[Detective Jones:]     Yes, sir.

[Trial counsel:]     Now, isn't it correct that in the original
                     report that you did you indicated that
                     twelve out of the nineteen baggies
                     located on Mr. Rios were positive for
                     heroin?

[Detective Jones:]     Yes, sir. That's why I did a
                     supplement—

| | |
|---|---|
| [Trial counsel:] | Okay. |
| [Detective Jones:] | —correcting that—that mistake. |
| [Trial counsel:] | Okay. So the initial mistake was what you put in the original report— |
| [Detective Jones:] | Yes. |
| [Trial counsel:] | —saying twelve out of the nineteen baggies— |
| [Detective Jones:] | Yes. |
| [Trial counsel:] | —tested positive for heroin? |
| [Detective Jones:] | Yes, sir. |
| [Trial counsel:] | Okay. And it turned out that the reason you made that mistake, you really had only tested one of the baggies? |
| [Detective Jones:] | I texted—I texted—test[ed] a couple of the baggies and just assume[d] that the rest of the bags— |
| [Trial counsel:] | Right. |
| [Detective Jones:] | —but I went back and tested all of them again to make sure— |
| [Trial counsel:] | Okay. |
| [Detective Jones:] | —before submitting and—and that's when I came up with the nineteen—with the eighteen in one. |
| [Trial counsel:] | Okay. But— |
| [Detective Jones:] | Initially— |
| [Trial counsel:] | So let me get the question out. So the mistake you made in the original report |

|  | was based on the fact that when you— when you said that twelve out of the nineteen of them tested positive— |
|---|---|
| [Detective Jones:] | Yeah. |
| [Trial counsel:] | —for heroin, you really had only tested one of them for heroin—you really had only tested one of the twelve baggies and assumed that all the other baggies had heroin— |
| [Detective Jones:] | Yes, sir. |
| [Trial counsel:] | —correct? |
| [Detective Jones:] | Uh-huh. |
| [Trial counsel:] | Yes? |
| [Detective Jones:] | Yes, sir. |
| [Trial counsel:] | Okay. And then later on when you tested them, it turned out they didn't have heroin, they had cocaine? |
| [Detective Jones:] | Yes, sir. |
| [Trial counsel:] | And then you did the supplemental report for the clarity? |
| [Detective Jones:] | Yes, sir. |
| [Trial counsel:] | And it's your testimony that when you tested the heroin that was taken in—the heroin that apparently was delivered in regard to the January 15, 2015 incident, the last one, you both—you tested and weighed that at the—at the— |
| [Detective Jones:] | Yes. |

| | |
|---|---|
| [Trial counsel:] | —office? Okay. And you used a calibrated scale to do that? |
| [Detective Jones:] | Yes, sir. |
| [Trial counsel:] | And you weighed it at over, I guess, thirty—you weighed it at 30.1 grams? |
| [Detective Jones:] | Yes, sir. |
| [Trial counsel:] | And Detective Jones was present when you did that? |
| [Detective Jones:] | Detective Saenz. |
| [Trial counsel:] | I—I'm sorry. Detective Saenz. |
| [Detective Jones:] | Yes, sir. |

Trial counsel cross-examined Detective Saenz about whether he was present when Detective Jones weighed and tested the heroin that he arranged to purchase on January 15, 2015 (Dkt. 18-2 at 536–37):

| | |
|---|---|
| [Trial counsel:] | Okay. Do you have an independent memory—did that refresh your memory, or do you remember actually doing that, actually taking possession of the ball-shaped item, transporting it to Detective Jones, or are you just assuming you did that but you don't really remember it? |
| [Detective Saenz:] | If I remember correctly, I had it and I turned it over to Detective Jones, yes. |
| [Trial counsel:] | Okay. You met him at a pre-determined location again? |
| [Detective Saenz:] | Yes. |
| [Trial counsel:] | Okay. Were you present when Detective Jones took any steps to weigh it? |

[Detective Saenz:]  No.

[Trial counsel:]    Were you present when Detective Jones
took any steps to test it?

[Detective Saenz:]  No.

Neither Detective Saenz's absence from when Detective Jones preliminarily tested the thirty grams of heroin, nor Detective Jones's mistake in his report concerning the results of the preliminary testing demonstrated tampering. *Armstrong*, 73 So. 3d at 171. Neither refuted the testimony by Detective Saenz that he gave the large bag of heroin to Detective Jones and the testimony by Detective Jones that he located the small bags of drugs in Mr. Ayende-Rios's pockets, received all other drugs from Detective Saenz, and sent all drugs to and received all drugs back from FDLE in substantially the same condition. (Dkt. 18-2 at 536, 607–15, 635–39)

The crime laboratory analyst from FDLE testified that she retrieved the substances from a vault at FDLE, placed the substances in an evidence locker during testing, and returned the substances to the vault after testing. (Dkt. 18-2 at 646–47) She tested the substance that Detective Saenz purchased on January 8, 2015 and confirmed that the substance was cocaine. (Dkt. 18-2 at 648) She tested substances in eight of the ten bags that Detective Saenz purchased on January 9, 2015 and confirmed that the substances were heroin and weighed 6.13 grams. (Dkt. 18-2 at 649–51) She tested the substance that Detective Saenz arranged to purchase on January 15, 2015 and confirmed that the substance was heroin and weighed 29.47 grams. (Dkt. 18-2 at

653–55) She tested some of the substances in the bags in Mr. Ayende-Rios's pocket and confirmed that the substances were cocaine. (Dkt. 18-2 at 656–57)

The analyst referred to her notes when testifying about the results of her testing the cocaine that Detective Saenz purchased on January 8, 2015. (Dkt. 18-2 at 647–49) The analyst testified that her report dated January 25, 2016 showed the results of her testing eight bags of heroin that Detective Saenz purchased on January 9, 2015. (Dkt. 18-2 at 649–51) Her report dated May 4, 2015 showed the results of her testing the bag of heroin that Detective Saenz arranged to purchase on January 15, 2015. (Dkt. 18-2 at 653–55) The report dated November 20, 2015 (Dkt. 18-2 at 1854–55) showed the results of her testing four of the bags that Detective Jones seized from Mr. Ayende-Rios's pocket after his arrest on January 15, 2015. (Dkt. 18-2 at 655–57) The analyst's failure to test all substances did not demonstrate tampering.

If trial counsel had moved to suppress the drugs based on lack of a chain of custody, the motion would not succeed. *Davis v. State*, 788 So. 2d 308, 310 (Fla. 5th DCA 2001). Also, trial counsel confronted Detective Jones about the mistake in his report and Detective Saenz about his absence from the preliminary testing of the heroin. Because Mr. Ayende-Rios failed to demonstrate either deficient performance or prejudice under *Strickland*, the post-conviction court did not unreasonably deny the claim. *Strickland*, 466 U.S. at 687. Ground seven is therefore denied.

Accordingly, it is **ORDERED** that:

1.     The amended petition for a writ of habeas corpus (Dkt. 13) is **DENIED**.

2.      The Clerk is directed to enter judgment accordingly and to close the case.

3.      Because Mr. Ayende-Rios neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE AND ORDERED** at Tampa, Florida, on August 2, 2023.

**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**